UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN BURGER,

          Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.
_____/

Case No. No. 13-13166

District Judge Lawrence P. Zatkoff

Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

    Plaintiff Steven Burger ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  Parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #14] and that Plaintiff's Motion for Summary Judgment be DENIED [Docket #11].

**I.  PROCEDURAL HISTORY**

    On August 24, 2007, Plaintiff applied for DIB,  alleging disability as of January 23, 2007 (Tr. 50 ).  Upon initial denial of the claim, Plaintiff requested an administrative hearing,

held on May 14, 2010 in Lansing, Michigan[1] (Tr. 50). Administrative Law Judge ("ALJ") Thomas L. Walters presided (Tr. 57). Plaintiff, represented by Mikel Lupisella, testified, as did Vocational Expert ("VE") Sharon Princer (Tr. 50). On June 10, 2010, ALJ Walters determined that Plaintiff was capable of a significant range of unskilled, exertionally light work (Tr. 53, 57). Plaintiff filed suit in this Court on April 20, 2012. Case no. 12-11763. On May 23, 2013, the Court upheld the Commissioner's denial of benefits. *Id., Docket #12*.

On August 9, 2010, Plaintiff reapplied for benefits, alleging an onset date of December 22, 2007[2] (Tr. 125-126). After the initial denial, Plaintiff again requested an administrative hearing, held on July 18, 2012 in Lansing, Michigan before Administrative Law Judge Earl Witten (Tr. 31). Plaintiff, represented by attorney Aaron Lemmens, testified, (Tr. 35-42), as did vocational expert ("VE") James Engelkes (Tr. 57-60). On July 25, 2012, ALJ Witten, adopting ALJ Thomas' earlier findings, found that Plaintiff could perform a range of unskilled, light work (Tr. 24-27).

On May 23, 2013 the Appeals Council declined to review the administrative decision[3] (Tr. 1-3). Plaintiff filed suit in this Court on July 24, 2013.

---

[1] The May 14, 2010 hearing transcript is not included in this administrative record.

[2] Later amended to June 11, 2010, one day after ALJ Walters' determination (Tr. 20).

[3] Coincidentally, the same day as judgment was entered in the original District Court claim.

## II.  BACKGROUND FACTS

Plaintiff, born December 15, 1959, was 52 at the time of the administrative decision (Tr. 125).  He completed 11th grade and worked previously as an automotive assembler (Tr. 149).  He alleges disability as a result of bilateral arm and elbow conditions (Tr. 148).

**A.  Plaintiff's Testimony**

Plaintiff offered the following testimony at the July 18, 2012 hearing:

His most severe impairments were arm, hand, and elbow pain (Tr. 35).  The pain was "constant" in his left arm and intermittent in the right (Tr. 35).  He rated the left-sided pain as a "six to seven" on a scale of one to ten (Tr. 36).  The pain was aggravated by "everything" (Tr. 36).  As a result of the upper extremity pain, he no longer bow hunted, rode a snowmobile, or repaired cars (Tr. 36).  He performed household chores slowly (Tr. 36).  He experienced interrupted sleep as a result of hand pain (Tr. 37).  He took one to two hour-long naps each day (Tr. 38).  He was unable to walk more than a block due to hip pain (Tr. 38).  For the same reason, he was unable to drive for more than one hour (Tr. 39).

His upper extremity conditions had not worsened since the June 10, 2010 denial of benefits, but he had developed hip problems since the earlier decision (Tr. 40).  He was told by treating sources that nothing could be done to improve his hip condition besides taking pain killers (Tr. 41).  None of his medical sources had ordered x-rays (Tr. 41).  His hip condition did not "bother" him except when walking (Tr. 41).  Since June 10, 2010, he had

hunted with a rifle "a couple times a year" (Tr. 41). He took pain medication "off and on" for the last five years, acknowledging August, 2011 treating records stating that he was not taking medication (Tr. 41). He took pain medication "every other day or whenever the pain gets worse . . ." (Tr. 42). He had been receiving weekly Workers' Compensation payments since 2007 (Tr. 42).

### B. Medical Records[4]

A February, 2006 MRI of the left elbow was unremarkable (Tr. 178), as were imaging studies of the shoulder from the same (Tr. 182). In August, 2010, office notes by James D. Balger, D.O. state that Plaintiff requested a referral for the elbow pain (Tr. 171). Dr. Balger's notes from the following month state that Plaintiff hurt his back after lifting a pail (Tr. 171). Dr. Balger noted the absence of involuntary muscle spasms (Tr. 171). He diagnosed Plaintiff with lumbar muscle strain and recommended the use of ice and heat (Tr. 171).

The following month, physiatrist Reuben S. Henderson, D.O. examined Plaintiff, noting reports of elbow pain, hand weakness, and loss of grip (Tr. 173). Plaintiff characterized the pain as a "six" on a scale of one to ten (Tr. 173). Plaintiff reported that he had undergone physical therapy and steroid injections (Tr. 173). He used arm bands, Ibuprofen, Lyrica, and Celebrex to cope with pain and numbness (Tr. 173). Dr. Henderson

---

[4]Medical evidence predating June 11, 2010 is included for background purposes only (Tr. 178, 182).

noted a full range of cervical motion, 4/5 strength in the bilateral shoulders, elbow flexors, and wrist extensors, but otherwise, 5/5 strength in the upper extremities (Tr. 174). Tinel and Phalen's tests were negative in both wrists (Tr. 174). Dr. Henderson recommended x-rays and an MRI of the cervical spine (Tr. 174). An October, 2010 MRI of the cervical spine was unremarkable (Tr. 176).

February, 2011 treating notes state that Plaintiff reported hip pain that became "worse with activity" (Tr. 175). Plaintiff reported that he did not take pain medication and slept "okay" (Tr. 175). May, 2011 examination notes show 5/5 strength and a full range of back and hip motion (Tr. 191). Dr. Henderson noted that Plaintiff currently performed aerobic exercises (Tr. 192). Plaintiff requested a prescription for pain medication (Tr. 191). He reported that the elbow pain was "about the same" (Tr. 185). In July, 2011, Plaintiff reported an occasional burning sensation in the right foot (Tr. 193). Dr. Henderson's notes from August, 2011 state that Plaintiff experienced level "seven" hip pain at rest and "nine" with activity (Tr. 185). He exhibited a full range of hip motion, a normal sensory exam, and 5/5 strength (Tr. 185). The same month, Plaintiff reported right foot pain (Tr. 187).

In November, 2011, Plaintiff reported that his upper extremity conditions were "improved since he retired" (Tr. 196). He demonstrated 5/5 strength in all extremities (Tr. 196). Dr. Henderson recommended manual traction (Tr. 197). The following month, Dr. Balger performed a physical examination, noting Plaintiff's report of chronic elbow pain and "depression/anxiety" (Tr. 198). Plaintiff reported foot pain, but noted an improvement while

wearing hunting boots (Tr. 198). Plaintiff also reported that he saw Dr Henderson "about twice a year for chronic recurrent elbow pain, which is doing better" (Tr. 198). Dr. Balger noted good muscle tone and "good general health" (Tr. 198).

In January, 2012, Brian Goosen, D.P.M. applied padding to Plaintiff's shoe to reduce right foot pain, noting that "a permanent accommodation" would be considered if the padding helped (Tr. 202). Dr. Goosen noted that additional treatment would be scheduled on an as needed basis (Tr. 202). An x-ray of the right foot was negative for fractures (Tr. 203). Dr. Balger's May and June, 2012 treating notes do not mention upper extremity, hip, or foot pain (Tr. 198).

### C. Vocational Testimony

VE Engelkes classified Plaintiff's past work as an auto assembler as unskilled and injection mold operator, semiskilled[5] (Tr. 43). He stated that both jobs were performed at the medium exertional level[6] (Tr. 43). ALJ Witten then posed the following set of limitations

---

[5] The VE stated that his findings were consistent with the vocational testimony from the first hearing (Tr. 43).

[6] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

to the VE, restating the residual functional capacity ("RFC") found in the June 10, 2010 decision:

> [L]ight work . . . except he should never lift more than ten pounds, perform overhead work or repetitively grip, grasp, push or pull. Claimant is able to walk and/or stand six hours per day, and the work must be unskilled. Given that restriction and the finding in the last decision, he would not be able to do his past relevant work, right?

The VE found that the above limitations would preclude Plaintiff's past relevant work, but would allow for the work of a restaurant host (5,000 positions in the lower peninsula of Michigan) and collator operator positions (5,000) (Tr. 44). The VE testified that if Plaintiff's testimony of pain and functional limitations were fully credited, no jobs would be available (Tr. 44). The VE stated that his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 45).

### D.  ALJ Witten's July 25, 2012 Decision

Adopting the June 10, 2010 "Step Two" determination, ALJ Witten found that Plaintiff experienced the severe impairments of "bilateral medial and lateral epicondylitis, left cubital tunnel syndrome, and bilateral carpal tunnel syndrome" but that the conditions did not meet or equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22, 24 52-53). He found that the hip and foot impairments alleged by Plaintiff were "non-severe because they are all easily treated and do not cause significant limitations in the claimant's ability to perform basic work activities" (Tr. 24). The ALJ noted that while Dr. Balger's records include Plaintiff's report of depression and anxiety, limitations as a result

of the conditions was not supported by the record (Tr. 24). Adopting the June 10, 2010 RFC in its entirety, ALJ Witten determined that Plaintiff had an RFC for light work with the following additional restrictions:

> [H]e should never lift more than 10 pounds, perform overhead work, or repetitively grip, grasp, push, or pull. Claimant is able to walk and/or stand up to six hours per day. Work must be unskilled (Tr. 24, 53).

The ALJ determined that while Plaintiff was unable to perform his past relevant work, he could perform the light work of a restaurant host and collator-operator (Tr. 27).

The ALJ discounted Plaintiff's allegations of pain and limitation. He cited February, 2011 treating records showing a full range of motion in bilateral lumbar spine and hip (Tr. 23, 25). The ALJ also noted that the Plaintiff was not taking pain medication at that time (Tr. 25). The ALJ cited records showing a full range of upper extremity motion and Plaintiff's statement that symptoms of CTS had been reduced since retiring (Tr. 23, 25, 196). He observed that Plaintiff's foot pain had been addressed with shoe padding (Tr. 23, 202). In support of his adoption of the June 10, 2010 RFC, ALJ Witten also cited Plaintiff's own testimony that the upper extremity condition had not worsened since the earlier decision (Tr. 25, 40).

### III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a

scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe

impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### A.  Hypothetical Question / Credibility

Plaintiff argues that the hypothetical question to the VE did not account for his full degree of impairment. *Plaintiff's Brief* , 7-11, *Docket #11*. He contends, in effect, that the omission of critical limitations from the hypothetical question invalidates the Step Five finding that he was capable of unskilled exertionally light work. *Id.* at 7 (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)).

Plaintiff does not identify any specific deficiencies in the hypothetical question. He does not cite the medical transcript in making this argument. He has not identified an error in the ALJ's discussion of the treating records, although for unknown reasons, includes a recitation of Sixth Circuit case law and the regulations pertaining to the deference accorded the opinion of a treating medical source in his brief. Instead, he argues that deficiencies in

the hypothetical question stem from the ALJ's erroneous credibility determination. He appears to contend that his testimony that he experienced constant pain and severely restricted functional abilities ought to have been reflected in the hypothetical question to the VE. *Plaintiff's Brief* at 9-10.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . . that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186,*2 (July 2, 1996). The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record." *Id.* [7]

The ALJ's credibility determination, and by extension the choice of hypothetical

---

[7]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

 (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

limitations, is well explained and well supported by the medical records. The ALJ cited Plaintiff's November, 2011 report that upper extremity conditions had improved since he retired and December, 2011 statement that the conditions were "better" (Tr. 25, 196, 198). The ALJ did not err in finding that the alleged foot or hip pain did not create significant work-related impairments (Tr. 24). May, 2011 records show a full range of back and hip motion (Tr. 191). Plaintiff's claim that he was unable to walk for more than a block due to hip pain is undermined by his ability to hunt and treating records showing that he took pain medication on a sporadic basis (Tr. 41, 175). He did not seek additional treatment for foot pain after receiving a shoe insert in January, 2012 (Tr. 24, 202). The most recent medical records (May and June, 2012) do not mention either hip or foot problems (Tr. 198). None of the imaging studies showed the presence of a discernable hip or foot condition (Tr. 176, 178, 182, 203). Because the ALJ's credibility determination and non-disability determination as a whole is well supported, he was not required to include the rejected claims among the hypothetical restrictions. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include properly discredited allegations of limitation in hypothetical to VE).

### B.  Social Security Acquiescence Ruling 98-4(6)

Further, Plaintiff's counsel fails to recognize that ALJ Witten was bound by the June 10, 2010 findings by ALJ Walters absent a downturn in his client's condition. As stated in the July 25, 2012 opinion, ALJ Witten performed his analysis pursuant to Acquiescence

Ruling ("AR") 98-4(6), which states that in the absence of new and material evidence postdating an earlier decision under the same Title, the later fact finder *must* adopt the previous RFC. (emphasis added). AR 98-4(6), codifying *Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997) provides as follows:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in law, regulations, or rulings affecting the finding or method for arriving at the finding.

In order to be awarded benefits subsequent to the original finding of non-disability, a claimant "must demonstrate that her condition has so worsened . . . that she was unable to perform substantial gainful activity." *Priest v. Social Security Admin*, 3 Fed.Appx. 275, 276, 2001 WL 92121, *1 (6th Cir. January 26, 2001)(citing *Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1232-33 (6th Cir.1993)).

Citing AR 98-4(6), ALJ Witten adopted the RFC found in the June 10, 2010 opinion, noting that if anything, Plaintiff's "abilities [were] perhaps, greater than previously found" (Tr. 24, 53).

The ALJ's finding that Plaintiff's condition did not worsen following the June 10, 2010 opinion is overwhelmingly supported by the record. First, Plaintiff testified that the upper extremity conditions forming the basis of his first application had not changed (Tr. 40). Plaintiff's acknowledgment that the upper extremity conditions had not worsened since the

first decision, by itself, defeats his new claim for benefits based on the longstanding hand, wrist, and arm conditions. Further, while Plaintiff testified that he had developed significant hip pain since June, 2010, the treating records support the ALJ's finding that hip pain did not create significant work-related limitations. As noted above, Plaintiff's testimony that he was unable to walk more than one block due to hip pain is undermined by the fact that he did not take pain medication on a regular basis (Tr. 38, 41). His most recent treating notes do not contain reference to the alleged hip condition. The medical records show that the foot pain was addressed with conservative measures. Because Plaintiff has not presented "new and material" evidence to support a worsening of his condition, the ALJ did not err in adopting the RFC found in the earlier determination.

The ALJ's finding that Plaintiff's condition had not worsened since the previous decision is generously supported by the record and as such, should not be disturbed by this Court. *Drummond, supra.*

## VI.  CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932

F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 27, 2014

---

### CERTIFICATE OF SERVICE

I hereby certify on August 22, 2014, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on August 22, 2014: **None.**

s/Terri L. Hackman
Judicial Assistant to
Magistrate Judge R. Steven Whalen
